My quarrel with the Opinion and Award of the majority is that it does not go far enough. Plaintiff proved that his cervical problems and chemical meningitis also resulted from his compensable injury. The combination of all of the problems resulting from the injury has left him unable to be gainfully employed without retraining. He is entitled to continuing disability pay until he is retrained to re-enter the work force. Prior to the accident he was able and did work full time. After the accident he was unable to work without retraining. I would modify and affirm rather than merely affirming.
Five days after the accidental injury plaintiff reported to Dr. Moore excessive pain in his right shoulder but denied any numbness or tingling — just pain radiating down along the lateral border of the biceps. On follow-up on June 19, 1997, plaintiff reported considerable pain in his right shoulder as well as in the medial aspect of his right arm; tenderness along the bicipital groove with range of motion and tenderness all along the right medial eipcondylar area. By June 26 he reported pain radiating along the posterior aspect of his right shoulder as well as radiating down to his biceps area without numbness or weakness. On June 30 an ultrasound of the right shoulder was obtained for a reported history of painful shoulders bilaterally, right worse than left and to evaluate for rotator cuff tear. An MRI was obtained to rule out rotator cuff tear. The MRI showed some degree of impingement but no evidence of rotator cuff tear. A small amount of fluid suggested possible bursitis.
On September 24, 1997, Dr. Kobs did outpatient surgery on plaintiffs right shoulder. At deposition following the surgery Dr. Kobs testified that in addition to impingement of the shoulder cup, plaintiff had a superior labral tear from anterior to posterior on the inside of the ball and cup joint which surrounds the entire region of the shoulder, which did not show up on the MRI. He also testified that no specific physical exam could test for that condition.
In October 1997 x-rays of the cervical spine were obtained which reflected significant degeneration at C5-6, moderate at C6-7 and moderate at C4-5. Dr. Kobs evaluated for cervical traction and home traction and cervical spine stretching exercises. Dr. Kobs referred plaintiff to Dr. Albright.
At his first visit with Dr. Albright plaintiff reported that he had been having pain from the neck down the right arm into the dorsum of the hand and thumb ever since he performed a lot of heavy work in May. The history taken by Dr. Albright showed no problems before May and that all symptoms had been present since May. The neck problems led to an anterior cervical diskectomy with fusion and iliac crest bone graft on December 10, 1997. In follow-up on February 24, 1998, Dr. Albright found persistent right cervical radiculopathy, depression, anxiety and work issues, as plaintiff had not worked in many months. Dr. Albright strongly recommended a psychologist or psychiatrist to help with plaintiff's emotional troubles since the antidepressant medication was not sufficient.
The deputy commissioner and the majority erred in finding and concluding that the plaintiff's cervical spine condition did not result from the injury by accident of May 22, 1997. The symptoms of a cervical injury and radicular symptoms were present at the initial office visit to Dr. Moore following the accident and persisted even after the cervical surgery. Even though there may have been degenerative changes in the neck prior to the accident, such problems were not apparent and were not disabling. The accident caused substantial aggravation to a prior non-disabling condition, made it disabling and is compensable.
Cervical radiculopathy involves the first eight nerves of the spinal column. These nerves travel through the cervical region down the shoulder through the elbow to the hand. Damage to one side of the body can cause pain to travel through the nerves to the other side, and pain beginning in the neck may travel down both arms.
The cervical injury was result of the injury sustained during the accident as evidenced by the progression in the intensity of the pain and the increase in radiation of symptoms. This is well documented by the medical records.
Plaintiff emphasized to Dr. Moore during his initial visit on May 27, 1997, following the injury by accident, that he had severe pain in his right shoulder as well as pain radiating along the lateral border of his biceps. Consequently, Dr. Moore, who is not a specialist but rather a family physician, focused only on plaintiff's right shoulder and diagnosed the most common of shoulder injuries, a rotator cuff tear. Dr. Moore referred plaintiff to Dr. Krakauer. Dr. Krakauer treated and then referred plaintiff to Dr. Kobs, a shoulder specialist. Dr. Kobs performed shoulder surgery and then referred plaintiff to Dr. Albright, who found the neck problems that had been bothering plaintiff ever since the accident but had not been found by the other physicians. The cervical injury was there all along, as evidenced by the medical records, but went undiagnosed and untreated until Dr. Albright.
Plaintiffs chemical meningitis was also a natural consequence of the injury by accident. The meningitis resulted from the CT Myelogram ordered in treatment of the injuries sustained in the work-related accident. After the first surgery (the decompression of the right shoulder) when plaintiff continued to complain of symptoms in the right upper extremity, Dr. Albright ordered a CT Myelogram to determine whether plants problems were coming from his shoulder or from the cervical area. The deputy commissioner correctly found as a fact that the meningitis resulted from the myelogram. However, the deputy erred in failing to find that this was part of the chain of events stemming from plaintiff's work-related accident.
The Deputy Commissioner and the majority only awarded compensation for the times plaintiff was out of work due to the shoulder injury. They should also have awarded compensation for the times plaintiff was out of work because of his neck problems and the chemical meningitis.
This 9th day of August 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER